## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Christine Hogate, | Case No. 20-cv-1295 (PAM/TNL) |
| Petitioner, | |
| v. | **REPORT &** |
| | **RECOMMENDATION** |
| Warden Starr, | |
| Respondent. | |

Christine Hogate, 1917 Hickman Road, Des Moines, IA 50314 *(*pro se Petitioner)[1]; and

Ana H. Voss, Ann M. Bildtsen, and Erin M. Secord, Assistant United States Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondent).

## I.  INTRODUCTION

This matter comes before the Court on Petitioner Christine Hogate's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"). (*See generally* Pet., ECF No. 1.)  This matter has been referred to the undersigned for a report and recommendation to the Honorable Paul A. Magnuson, Senior United States District Judge for the District of

---

[1] Petitioner previously contacted the Court to inform it that she was now at a halfway house at this address.  A search of the Bureau of Prisons ("BOP") database provides that she is currently located at "Kansas City RRM."  *See* https://www.bop.gov/inmateloc/ (last visited July 2, 2021).  RRMs, or "Residential Reentry Management" Field Offices administer contracts for community-based programs and serve as the [BOP] local liaison . . . . RRM Staff also monitor local Residential Reentry Centers which are responsible for providing federal offenders with community-based services that will assist with their reentry needs."
https://www.bop.gov/about/facilities/offices.jsp#rrm (last visited July 2, 2021).  Residential Reentry Centers are also known as halfway houses.  *See* https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp (last visited July 2, 2021).  The Kansas City RRM manages the North Central Region, including Iowa. https://www.bop.gov/locations/ccm/ckc/ (last visited July 2, 2021).

Minnesota, pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.  For the reasons discussed below, the Court recommends that this Petition be denied.

## II.  BACKGROUND

### A. Criminal Proceedings

On October 15, 2008, Petitioner was charged by way of a superseding indictment in the United States District Court for the Northern District of Iowa with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); one count of conspiring to distribute cocaine base in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846; two counts of distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; one count of possessing a firearm in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A) and § 2; and one count of notice of forfeiture of the firearm pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).  (ECF No. 18-1 at 1-4.)[2]  *See United States v. Christine Michelle Hogate*, No. 4:08-CR-00004 (S.D. Iowa 2008) (hereinafter "federal criminal case").

On October 17, 2008, the Government filed an Information pursuant to 21 U.S.C. § 851 stating its intention to seek increased punishment based upon two prior felony narcotics convictions.  (ECF No. 18-2 at 1-2.)  Those felony convictions were: (1) a 1996 Iowa conviction for possession of a controlled substance with intent to deliver in violation of Iowa Code Section 124.401(1)(c)(2)(B), for which Petitioner was sentenced to a period of imprisonment not to exceed 10 years; and (2) a 2004 Iowa conviction for possession with

---

[2] For ease of location and clarity, the Court cites to Respondent Warden Starr's exhibits using the ECF docket number and pagination.

intent to deliver cocaine base, possession with intent to deliver cocaine, and two counts of drug tax stamp,[3] for which Petitioner was sentenced to a period of imprisonment totaling 15 years. (*Id.* at 1.)

On February 10, 2009, Petitioner pleaded guilty to count four of the superseding indictment, possession of a firearm in furtherance of a drug trafficking crime and agreed to the forfeiture of the firearm. (ECF Nos. 18-3, 18-4 & 18-5.) On June 11, 2009, Petitioner was sentenced to 188 months' imprisonment and five years of supervised release. (ECF No. 18-6 at 2-3.) Petitioner did not file a direct appeal. (*See* Resp. to Pet. (hereinafter "Resp.") at 4, ECF No. 15.)

## B. Post-Conviction Filings and the Adjustment of Petitioner's Sentence

### 1. Petitioner's Motion Under 28 U.S.C. § 2255

Petitioner filed a motion with the sentencing court challenging her sentence pursuant to 28 U.S.C. § 2255 on June 7, 2010. (ECF No. 18-7.) Petitioner argued that she was unfairly sentenced as a career criminal based on the small amount of crack cocaine involved in her case and that she was not able to benefit from a recent change in the sentencing guidelines in cases involving crack cocaine. (*Id.* at 2-3.) Specifically, Petitioner maintained that the presence of the firearm did not make her a career criminal, and instead that "the 'crack cocaine' that was the 'furtherance' of the crime is what made [her] a career criminal." (*Id.* at 2.) The sentencing court denied her motion, finding that it was Petitioner's criminal history, and not the amount of crack cocaine involved, that established

---

[3] This portion of the Enhancement Information and Notice of Prior Convictions appears to inadvertently omit the Iowa Code sections which correspond with those crimes. (*See id.*)

her sentencing range, and that Petitioner had, with limited exceptions, waived her right to appeal the sentence if she was sentenced within a 188-to-262-month range outlined in her plea agreement.[4]  (ECF No. 18-8 at 1-3.)  The court concluded that Petitioner had "voluntarily agreed to be sentenced to between 188 and 262 months," that she was sentenced within this expected range, and that she had "failed to demonstrate any miscarriage of justice would occur if the waiver was not enforced."  (*Id.* at 3.)  Petitioner appealed this decision to the Eighth Circuit and the Eight Circuit summarily affirmed the sentencing court's order.  (ECF No. 18-17.)

### 2.  Petitioner's Motion Seeking Jail Time Credit

On August 16, 2010, Petitioner filed a motion with the sentencing court seeking 957 days' worth of jail time credit.  (ECF No. 18-9.)  The Court denied this motion, finding that Petitioner had not exhausted administrative procedures within the BOP.  (ECF No. 18-10.)

### 3.  Petitioner's May 2011 Filings

On May 13, 2011, Petitioner filed a number of documents with the sentencing court, including a second motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (ECF No. 18-11); a notice of appeal of the order denying her previous § 2255 motion (ECF No. 18-12); and an application for a certificate of appealability of that same order.  (ECF No. 18-13.)  The sentencing court denied Petitioner's § 2255 motion and

---

[4] Pursuant to her plea agreement, Petitioner waived any right to challenge her sentence pursuant to § 2255 unless it was based on ineffective assistance of counsel or prosecutorial misconduct on grounds not known at the time of the plea agreement. (ECF No. 18-4 at 5.)  The sentencing court, in reviewing Petitioner's § 2255 motion, did acknowledge that even a knowing and voluntary waiver of those rights by Petitioner would not be enforced if doing so would result in a miscarriage of justice.  (*See* ECF No. 18-8 at 2 (citation omitted).)

application for a certificate of appealability, finding that Petitioner had not made a substantial showing of a denial of a constitutional right which warrants the issuance of a certificate of appealability, and that, based on the fact that Petitioner had made a prior motion under § 2255, she must obtain an order from the Eighth Circuit authorizing the sentencing court to consider her second motion under the same statute. (ECF No. 18-15 at 1-2.) Petitioner appealed this decision to the Eighth Circuit and the Eight Circuit summarily affirmed the sentencing court's order. (ECF No. 18-17.)

### 4. The Sentencing Court's Adjustment of Petitioner's Sentence

On June 5, 2015, the sentencing court issued an order, nunc pro tunc and pursuant to Federal Rule of Criminal Procedure 36, which adjusted Petitioner's sentence to provide 24 months' credit for time spent in state custody for the same conduct related to her federal sentence. (ECF No. 18-18; *see also* ECF No. 18-19.) The sentencing court determined that:

> At the time of the underlying offense, [Petitioner] was on parole under the supervision of the State of Iowa. As a result of the same conduct that resulted in the Federal conviction, [Petitioner] was detained for state parole violation. While at the time of sentencing it was anticipated [Petitioner] would promptly be paroled to the Federal detainer, in fact she remained in state custody in connection with the parole violation for 24 months. Her state parole was later revoked and she was given state credit for the 24 month period, thus making her ineligible for that same credit against her federal sentence under [BOP] guidelines. Given the expectations of [Petitioner's] counsel and the Court at the time of the Federal sentencing, the issue of credit against the resulting Federal sentence was not pursued. Had the parties known then what has become apparent, an adjustment to the sentence would have been made based upon the fact that the conduct that

resulted in her state custody was the same as that related to the
Federal sentence.

(ECF No. 18-18 at 1.) The sentencing court also noted that Petitioner's previous motion

for credit was denied, but only because she had not first exhausted administrative

procedures within the BOP, and that the denial was "without prejudice to the current

matter." (*Id.* at 2 n.1.) The sentencing court issued an Amended Judgment imposing a

sentence of 164 months on count four of the superseding indictment.[5] (ECF No. 18-19.)

### 5. Petitioner's Motion for Good Time Credit

On January 21, 2020, Petitioner filed a motion to award good time with the

sentencing court. (ECF No. 18-21.) Petitioner argued that she was entitled to good

conduct time on her federal sentence for the 24 months that she was in "both" federal and

state custody in connection with the same conduct that resulted in her federal conviction.

(*Id.* at 1-3.) The sentencing court denied Petitioner's motion, finding that the court had

previously adjusted Petitioner's sentence pursuant to a nunc pro tunc order in order to

"accommodate the overlapping period of time," and that Petitioner's sentence "was not

ordered to be concurrent with any other sentence." (ECF No. 18-22 at 1.) Because

Petitioner's sentence was not concurrent with her state sentence, the sentencing court

further found that the BOP had made no errors in failing to give her good time credit for

time also spent "obtaining credit against a state sentence." (*Id.*) The court also noted that

Petitioner's motion was not one alleging miscalculation of good time by the BOP under 28

U.S.C. § 2241, and that any action pursuant to that statute would need to be brought in

---

[5] Petitioner's five-year term of supervised release did not change. (*See id.* at 3.)

Minnesota, where Petitioner was then in custody. (*Id.* at 1, 2 n.1.) The sentencing court concluded that the relief provided by its June 5, 2015 nunc pro tunc order "would appear to be the only benefit available to [Petitioner] with regard to the overlap in state and anticipated federal custody." (*Id.* at 2.)

### 6. Petitioner's Motion Under 18 U.S.C. § 3582(c)(1)(A)(i)

On September 11, 2019, Petitioner filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), asking the sentencing court to reduce her sentence.[6] (ECF No. 18-20.) On April 10, 2020, Petitioner filed a supplemental brief in support of this motion. (ECF No. 18-23.) In this supplemental briefing, Petitioner argued that the COVID-19 pandemic presented additional extraordinary and compelling reasons for her release and that she is uniquely susceptible to complications related to COVID-19 due to her high blood pressure, chronic pain, reduced mobility, and stomach ulcerations resulting from a separate bacterial infection. (*See generally id.*) On April 27, 2020, the sentencing court denied Petitioner's motion, first finding that Petitioner's "sentencing arguments and rehabilitative efforts, individually or in combination, do not constitute an extraordinary or compelling reason warranting compassionate release." (*Id.* at 24.) The court also found, with respect to Petitioner's supplemental argument for release due to the pandemic, that Petitioner failed to indicate whether she submitted this second request for

---

[6] Warden Starr's exhibits in support of its Response to the Petition do not include Petitioner's original brief in support of her September 11, 2019 motion filed before the sentencing court. The sentencing court in its order, however, summarized that Petitioner originally argued that "extraordinary and compelling reasons exist for a sentence reduction because the legal landscape has changed dramatically since she entered her plea and because her sentence would be substantially lower if she were convicted and sentenced today." (ECF No. 18-24 at 11; *see also id.* at 12-16 (further summarizing Petitioner's original arguments).)

release on the basis of the pandemic to the warden; that she had not submitted any medical evidence of the conditions from which she allegedly suffers; and that there was "an insufficient record whether her condition is sufficiently severe to warrant release based on risk of exposure to COVID-19." (*Id.* at 25.)

Petitioner appealed the sentencing court's order to the Eighth Circuit on May 12, 2020. (ECF No. 18-25.) On January 22, 2021, the Eighth Circuit affirmed the sentencing court's order denying Petitioner's motion for compassionate release. *See United States v. Hogate*, No. 20-1968, 834 Fed. App'x 288 (8th Cir. Jan. 22, 2021) (per curiam).

### C. Sentence and Good Time Credit Calculations by BOP

According to the Presentence Investigation report prepared for Petitioner's federal criminal case, Petitioner had previously been sentenced to 10 years imprisonment in Case No. FECR116962 in the State of Iowa. (Decl. of Jan Stopps (hereinafter "Stopps Decl." ¶ 5, ECF No. 16; *see also* ECF No. 16-2.) Petitioner was released from state custody on parole on June 7, 2007. (*Id.*) While she was physically released on parole, however, the State of Iowa continued to run her sentence until it was discharged on July 1, 2010. (*Id.* ¶ 23; *see also* ECF No. 16-2 at 1; ECF No. 16-9 at 9.) Petitioner was arrested twice later that year, in July and September 2007, but released soon after in both instances.[7] (Stopps Decl. ¶ 7.) Petitioner was then arrested by the Polk County Sheriff's Office on October 10, 2007, for violating her state parole and for charges related to her federal criminal case. (*Id.* ¶ 8; *see also* ECF No. 16-3.)

---

[7] Specifically, Petitioner was in custody from July 18-19, 2007 and on September 7, 2007. (Stopps Decl. ¶¶ 6-7.)

A federal criminal complaint was filed against Petitioner in the United States District Court for the Southern District of Iowa on November 15, 2007, alleging that Petitioner distributed cocaine base and possessed a firearm on or about July 18, 2007. (Stopps Decl. ¶ 9; *see also* ECF No. 16-4.)  The state charges against Petitioner, for which she was arrested on October 10, 2007, were dismissed by Polk County officials on November 16, 2007.  (Stopps Decl. ¶ 10; *see also* ECF No. 16-5.)  Petitioner, however, continued to remain in state custody pending parole revocation proceedings in case number FECR116962.  (Stopps Decl. ¶ 10; *see also* ECF No. 16-3 at 2.)

Petitioner was indicted by a federal grand jury for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) in the Southern District of Iowa on January 8, 2008.  (Stopps Decl. ¶ 11; *see also* ECF No. 16-6.)  The Court previously discussed the October 15, 2008 superseding indictment, as well as Petitioner's plea and sentencing in the federal criminal case, above.  *See supra* Section II(A).

Petitioner's state parole in case number FECR116962 was revoked on January 9, 2008.  (Stopps Decl. ¶ 12; *see also* ECF No. 16-2.)  On February 15, 2008, while in state custody on her parole violation sentence, Petitioner was taken into temporary custody by the U.S. Marshals pursuant to a writ of habeas corpus *ad prosequendum*.  (Stopps Decl. ¶ 13; *see also* ECF No. 16-7.)  Petitioner remained in temporary federal custody and was returned to state custody on June 17, 2009, after she pleaded guilty and was sentenced in the federal criminal case.  (Stopps Decl. ¶ 15; *see also id.* ¶ 14; ECF No. 16-7 at 1.)  The U.S. Marshals filed a detainer with the state of Iowa on June 17, 2009.  (ECF No. 16-7 at 1.)

On September 9, 2009, the state Board of Parole approved Petitioner for parole. (Stopps Decl. ¶ 16.)  Iowa paroled Petitioner to the U.S. Marshal Service's detainer on October 22, 2009.  (*Id.* ¶ 17; *see also* ECF No. 16-2 at 1; 16-7 at 1.)

When computing Petitioner's sentence, the BOP found that Petitioner was released into exclusive federal custody on October 22, 2009.  (Stopps Decl. ¶ 22.)  The BOP has not awarded prior custody credit because the time Petitioner spent in custody prior to that date was credited against her state parole sentence.  (*Id.* ¶ 23.)  The BOP also did not credit the time Petitioner spent in federal custody pursuant to the writ of habeas corpus *ad prosequendum*.  (*Id.* ¶ 24.)  The BOP calculated that, based on Petitioner's 13 year, 8 month sentence, she was originally eligible to earn 737 days of good conduct time; Petitioner, however, lost 80 days of good conduct time due to discipline.  (*Id.* ¶ 26; *see also* ECF No. 16-13 at 2.)

### D.  Habeas Petition Under 28 U.S.C. § 2241

When the Petition was filed, Petitioner was confined at the Federal Correctional Institution in Waseca, Minnesota.  (Pet. at 1.)[8]  Petitioner later informed the Court that she was transferred to a halfway house in Des Moines, Iowa; the BOP states she is currently located at the Kansas City RRM.  *See supra* n.1.[9]  She has a projected release date of September 2, 2021, via a good conduct time release.  (ECF No. 18-1 at 2.)  In her habeas Petition, Petitioner makes allegations related to her federal conviction as well as her

---

[8] For ease of location and clarity, the Court cites to the Petition and other documents supporting the Petition using the ECF pagination.

[9] As discussed in that footnote, RRM's monitor local Residential Reentry Centers ("RRC"), also known as halfway houses.  Given that the Kansas City RRM manages the North Central Region, including Iowa, as well as Petitioner's representation to the Court, the Court believes Petitioner is currently housed in the same RRC in Des Moines.

sentence.  She also alleges that the BOP has miscalculated her federal sentence and that the BOP abused its discretion by not releasing her to home confinement pursuant to the CARES Act, 18 U.S.C. § 3582(c)(1)(A)(i).  (*See* ECF No. 1-1 at 6; *see also* Pet.'s Supplemental Br. in Supp. of 2241 Mot. (hereinafter "Br. in Supp." at 1-2, ECF No. 3.) Petitioner requests that the Court vacate her remaining sentence and probation or award her 108 days' good time credit.  (Pet. at 11; *see also* Br. in Supp. at 2 (requesting that the Court "reduce [Petitioner's] sentence for her 'owed good time', 'restored loss of good time' and to convert the remining . . . imprisonment to home confinement.").)

### III.  ANALYSIS

A person detained by the government may file a writ of habeas corpus to challenge the legality of his or her confinement and, if successful, obtain his or her release.  *See Preiser v. Rodriguez,* 411 U.S. 475, 485 (1973).  A person is not entitled to habeas relief unless he or she "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A writ of habeas corpus is the appropriate vehicle for an inmate who seeks an earlier release from prison.  *Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014).

As a preliminary matter, though Petitioner is no longer in custody at FCI-Waseca and is now at an RCC in Iowa, the Court finds that it retains jurisdiction over her Petition, as she appropriately filed this Petition while in custody in this state.  *See Vaughn v. Marques*, No. 18-cv-1266 (JRT/HB), 2019 WL 2492777, at *3-4 (D. Minn. May 15, 2019) (collecting cases and finding that the court had jurisdiction to consider a petition when the petition was fully briefed and the respondent had not moved to dismiss or transfer the

petition based on lack of jurisdiction post-transfer), *report and recommendation adopted*, 2019 WL 2491959 (D. Minn. June 14, 2019) ; *see also Weeks v. Wyrick*, 638 F.2d 690, 692 (8th Cir. 1981) ("Once the custodian is properly served, subsequent transfer of the petitioner does not cause a loss of habeas corpus jurisdiction in the original district.") (citing cases).  The Court thus moves to the claims made in the Petition.

### A. Challenges to Conviction and Sentence

Petitioner challenges her conviction, stating that she was illegally detained from November 16, 2007 through January 8, 2008 and during half that time was in segregation; that the indictment was illegal because it was time barred; that the original warrant is missing; and that her sentence was excessive.  (Pet. at 2, 7, 9-11.)  The Petition includes a discussion of Petitioner's previous motions under 28 U.S.C. § 2255 (*Id.* at 4; *see also id.* at 10 ("I've always appealed my excessive sentence.").)

In its response to the Petition, Respondent first argues that this Court should recommend dismissal of Petitioner's challenges to her conviction and sentence for lack of jurisdiction on the basis that, at the time the Petition was filed, there was an appeal of the sentencing court's denial of Petitioner's motion for compassionate release pending.  (*See* Resp. at 20-23.)  That appeal has since been denied.  *See Hogate*, 834 Fed. App'x 288.  The Court thus considers whether it has jurisdiction under § 2255's savings clause.

"A motion under 28 U.S.C. § 2241 challenges the *execution* of a sentence while a motion under 28 U.S.C. § 2255 challenges the *imposition* of a sentence."  *Deleston v. Wilson*, No. 13-cv-2733 (JNE/SER), 2014 WL 3384680, at *3 (D. Minn. July 10, 2014). "It is well settled a collateral challenge to a federal conviction or sentence must generally

be raised in a motion to vacate filed in the sentencing court under § 2255 . . . , and not in a habeas petition filed in the court of incarceration . . . under § 2241." *Hill v. Morrison*, 349 F.3d 1089, 1091 (8th Cir. 2003).

Respondent argues this Court lacks jurisdiction to consider Petitioner's collateral challenge to her sentence under § 2241 because she has not shown that the remedy under § 2255 was inadequate or ineffective. (Resp. at 25-26.) The Court agrees.

Under 28 U.S.C. § 2255(e),

> [a]n application for a writ of habeas corpus in [sic] behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of [her] detention.

Because Petitioner is asserting a collateral challenge to her conviction and sentence, a motion under § 2255 is the exclusive remedy available to her unless she can show that § 2255 would be inadequate or ineffective. *Aragon-Hernandez v. United States*, No. 13-cv-2218 (SRN/AJB), 2014 WL 468266, at *2 (D. Minn. Feb. 6, 2014) ("A motion under [§] 2255 is the exclusive remedy available to a federal prisoner asserting a collateral challenge to [her] conviction or sentence, except under limited circumstances where the remedy under [§] 2255 would be 'inadequate or ineffective.'" (citing *Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004)); *see Abdullah*, 392 F.3d at 959 ("A petitioner who seeks to challenge [her] sentence or conviction generally must do so in the sentencing court through § 2255 and cannot use § 2241 to challenge the conviction without first showing that § 2255 would be inadequate or ineffective.").

The savings clause "permits a petition under § 2241 if the § 2255 remedy is inadequate or ineffective to test the legality of a conviction or sentence." *Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010) (citing 28 U.S.C. § 2255(e)). The petitioner has the burden of showing that the remedy under § 2255 is inadequate or ineffective. *Abdullah*, 392 F.3d at 959; *Hill*, 349 F.3d at 1091.

"Courts have found a remedy under 28 U.S.C. § 2255 to be inadequate or ineffective only in extremely limited circumstances." *Caravalho v. Pugh*, 177 F.3d 1177, 1178 (10th Cir. 1999); *see Deleston*, 2014 WL 3384680, at *4 ("Courts have interpreted 'inadequate or ineffective' very narrowly."). To show that the remedy under § 2255 would be inadequate or ineffective, "more is required than demonstrating that there is a procedural barrier to bringing a § 2255 motion." *United States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir. 2000); *accord Abdullah*, 392 F.3d at 959. A motion under § 2255 is not inadequate or ineffective because § 2255 relief has already been denied, the petitioner has been denied permission to file a second or successive § 2255 motion, a second or successive § 2255 motion has been dismissed, or the one-year statute of limitations and/or grace period has expired. *Hill*, 349 F.3d at 1091.

Further, a petitioner cannot show that § 2255 is inadequate and ineffective where she had "any opportunity to bring [her] claim beforehand." *Abdullah*, 392 F.3d at 963. "A prisoner cannot raise, in a § 2241 motion filed in the district of incarceration, an issue which could [sic] or was actually raised in the § 2255 motion filed in the sentencing district." *Hill*, 349 F.3d at 1092; *see Lurie*, 207 F.3d at 1077-78 (petitioner failed to demonstrate § 2255 motion was inadequate or ineffective because claims raised in § 2241 petition could

14

have been maintained in a § 2255 motion or on direct appeal); *see also Prost v. Anderson*, 636 F.3d 578, 584 (10th Cir. 2011) ("The relevant metric or measure, we hold, is whether a petitioner's argument challenging the legality of [her] detention could have been tested in an initial § 2255 motion.  If the answer is yes, then the petitioner may not resort to the savings clause and § 2241.").

The savings clause in § 2255 is jurisdictional and "provides the court of incarceration as having subject matter jurisdiction over a collateral attack on a conviction or sentence rendered by another district court only if the remedies in the sentencing district are inadequate or ineffective." *Hill*, 349 F.3d at 1091.  The Petition and supporting documents do not state why the numerous motions for relief Petitioner filed with the sentencing court, including § 2255 motions, were inadequate or ineffective avenues for relief from her conviction or sentence.  Nor does Petitioner specify, notwithstanding the plea agreement's waiver of most post-conviction collateral attacks, why she did not raise the attacks on her conviction before the sentencing court.  Because Petitioner has not shown that § 2255 was inadequate or ineffective to raise her conviction and sentencing arguments, this Court lacks jurisdiction to consider her collateral challenge to her conviction and sentence under § 2241.  *See Abdullah*, 392 F.3d at 964; *Hill*, 349 F.3d at 1091.

### B.  Challenges to Calculation of Federal Sentence and Good Time Credit

Petitioner argues that she came into primary federal custody on November 16, 2007. (Pet. at 7.)  She further argues that, on that basis, she should be credited with the time between her state parole on September 9, 2009, and when the U.S. Marshals assumed custody of her on October 22, 2009; and that she is entitled to earn federal good conduct

time on the two years she spent in state custody.  (*Id.* at 6-8, 11.)

When computing a federal sentence, the BOP must determine when the sentence began and what credit the defendant should receive for time spent in presentence custody. *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006).  Under the primary jurisdiction doctrine, a person does not begin his or her federal sentence until "the United States takes primary jurisdiction and [the person] is presented to serve [his or her] federal sentence." *Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013).  The "first sovereign to take physical custody of a defendant retains 'primary jurisdiction' until releasing that jurisdiction." *Elwell*, 716 F.3d at 481; *see also United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005). Primary jurisdiction may typically be released in only one of four ways: (1) release on bail; (2) dismissal of charges; (3) parole; or (4) expiration of sentence.  *Elwell*, 716 F.3d at 481. The fact that another sovereign might obtain physical custody of the defendant through a writ of habeas corpus *ad prosequendum* does not deprive the original sovereign of primary jurisdiction.  *Id*.

In this case, the State of Iowa first gained primary jurisdiction over Petitioner because it first arrested her on October 10, 2007, on charges related to those in her federal criminal case and for violating her state parole.  While the State of Iowa dropped related criminal charges against Petitioner after she was charged in the federal Complaint, it did not relinquish jurisdiction of Petitioner because she was still being held on her parole violation in a separate case.  That Petitioner was temporarily taken into federal custody pursuant to a writ of habeas corpus *ad prosequendum* from February 15, 2008 through June 17, 2009 also did not deprive the State of Iowa of primary jurisdiction.  The federal

authorities first obtained primary jurisdiction over Petitioner on October 22, 2009, when she was paroled to the custody of the U.S. Marshals pursuant to a federal detainer. Her federal sentence therefore began that same day. *See id.*; 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served.")

Though Petitioner's sentence did not begin until October 22, 2009, federal law still entitles her to credit for the time she spent in official detention prior to the imposition of her sentence, provided that the detention was the "result of the offense for which the sentence was imposed" or the "result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed[.]" 18 U.S.C. § 3585(b). For Petitioner to be entitled to credit for that time, however, the time spent in official detention must not have "been credited against another sentence." *Id.*

Petitioner is not entitled to presentence credit for the time she spent incarcerated from July 18-19, 2007; on September 7, 2007; and from October 10, 2007 through October 22, 2009, because this time was credited toward her parole violation sentence in the State of Iowa. (Stopps Decl. ¶¶ 23-24; ECF No. 16-2 at 1; ECF No. 16-9 at 9.) Because the time that Petitioner spent in official detention during those periods was credited toward her state sentence, she is not entitled to also have the time credited to her federal sentence. 18 U.S.C. § 3585(b); *see also Elwell*, 716 F.3d at 484. The sentencing court, when discovering that Petitioner was not promptly paroled into federal custody after her federal sentencing, adjusted Petitioner's sentence by 24 months. (*See* ECF No. 18-18 at 1 (also finding that

petitioner "was given state credit for the 24 month period, thus making her ineligible for that same credit against her federal sentence under [BOP] guidelines.").)  Notwithstanding this adjustment, Petitioner cannot receive "double credit for [her] detention time." *United States v. Wilson*, 503 U.S. 329, 337 (1992).  The BOP has correctly calculated Petitioner's sentence, including her good conduct time credit.

### C.  Home Confinement Placement

Petitioner also asks this Court to review the BOP's denial of her transfer to home confinement pursuant to the CARES Act.  (Br. in Supp. at 1-3.)  She argues that, notwithstanding the BOP's identification that she is high risk and thus ineligible for transfer to home confinement, her vulnerability to COVID-19, combined with conditions at FCI-Waseca warrant her release.  (*Id.*; *see also* Pet.'s Reply at 5-8, ECF No. 20.)  She bolsters this argument by noting that she has little time left in her sentence and that the remainder of the requests made in her habeas Petition have merit.  (*Id.*)  Petitioner also argues that the BOP's usage of the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") risk assessment system was improper as it relates to the BOP's determination that she was not eligible for release.  (ECF No. 1-1 at 13-14.)

The BOP has the authority to place prisoners in halfway houses or home confinement pursuant to the First Step Act, 18 U.S.C. 3624(c)(2).  In response to the COVID-19 pandemic, the CARES Act, in relevant part, granted the Director of the BOP the authority to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under . . . section 3624(c)(2) or title 18." Pub. L. No. 116-136, § 12003(b)(2).  The BOP developed procedures for evaluating

and prioritizing prisoners for home confinement, including age and vulnerability of the inmate to COVID-19; the inmate's conduct in prison; the length of their sentence; and the percentage of a sentence remaining. (*See generally* Decl. of Jennifer Hillsman, ECF No. 17.) These evaluative factors included an inmate's score under the PATTERN risk assessment tool: notably, only inmates with low scores would be transferred to home confinement. (*Id.* ¶ 5(d).) Pursuant to this review, the BOP determined that Petitioner does not qualify for home confinement based on her High PATTERN risk level. (*Id.* ¶ 23.)

"[P]risoners do not have a constitutional right to placement in a particular facility or place of confinement." *Jones v. Fikes*, No. 20-cv-1341 (SRN/HB), 2020 WL 8513799, at *5 (D. Minn. Nov. 2, 2020) (citing *Meacham v. Fano*, 427 U.S. 215, 224 (1976) (additional citation omitted), *report and recommendation adopted*, 2021 WL 533700 (D. Minn. Feb. 12, 2021). Further, "the BOP has exclusive authority to determine the placement of prisoners." *United States v. Brown*, No. 12-cr-172(3) (SRN), 2020 WL 1922567, at *2 (D. Minn. Apr. 21, 2020) (citing 18 U.S.C. § 3624(c)(2)). "The . . . CARES Act . . . merely give[s] eligible inmates the possibility to be considered for home confinement." *Id.* (citations omitted).

The Court's review of the Petition and supporting documents suggest to the Court that Petitioner's request for transfer to home confinement under the CARES Act is a request for an individualized review of a specific BOP decision—namely, whether or not Petitioner is eligible for transfer to home confinement under the BOP's parameters. (*See, e.g.*, Mem. in Supp. at 2 (stating that FCI-Waseca is using the PATTERN system as opposed to another risk assessment system and arguing that "Waseca is using the new

'Pattern System' as a gate keeper not to release me;" and further arguing "[Petitioner's] unique vulnerability to COVID-19 in the prison setting warrants this motion. No one has been tested."); Pet.'s Reply at 7 (arguing, "[p]utting me at risk is very crule [sic] when my sentence is at its near end . . . In conjunction with reasons stated in her briefs . . . [Petitioner] respectfully submits that her compromised physical health and unique dangers she would face of contracted COVID-19."); ECF No. 1-1 at 14 (arguing that due to the BOP's use of the PATTERN system, "I am being over looked and bypassed along with being discriminated against because of my color and priors;" and "per the Cares Act 2020 I qualify for home confinement. I am at risk. I pray that I am reconsider [sic] for home confinement.").)

Courts cannot review the BOP's administrative decision to deny Petitioner's request for transfer to home confinement, as "18 U.S.C. § 3625 'precludes judicial review of agency adjudicative decisions.'" *Carrasco v. Fikes*, No. 20-cv-1257 (WMW/KMM), 2021 U.S. Dist. LEXIS 71006, at *3 (D. Minn. Feb. 11, 2021) (quoting *Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 70248 (D. Minn. Apr. 12, 2021); *cf. Jones*, 2020 WL 8513799, at *5 (finding that Petitioner did not allege the BOP had violated the Constitution, established federal law, or exceeded its statutory authority, and concluding that "[t]he BOP's implementation of the CARES Act is not subject to judicial review merely because [petitioner] is dissatisfied with" the BOP's review of petitioner's request for transfer to home confinement). The Court thus lacks subject matter jurisdiction to review the BOP's administrative decision as it relates to the review of Petitioner's confinement. The Court recommends denying the

Petition.

### D. Evidentiary Hearing

Lastly, this Court recommends that no evidentiary hearing be held.  The dispute can be resolved on the basis of the record and legal arguments submitted by the parties. *Wallace v. Lockhart*, 701 F.2d 719, 229-30 (8th Cir. 1983).

## IV.  RECOMMENDATION

Based upon the file, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1.  Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (ECF No. 1) **BE DENIED**.

2.  This action be **DISMISSED**.

Date: July __2__ , 2021                          _____*s/Tony N. Leung*_____
                                                 Tony N. Leung
                                                 United States Magistrate Judge
                                                 District of Minnesota

                                                 *Hogate v. Starr*
                                                 Case No. 20-cv-1295 (PAM/TNL)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).